`

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>v.<br><br>**CHRISTIAN CATALA-PEREZ,**<br>Defendant. | **Criminal No. 25-034 (SCC)** |

### UNITED STATES' SENTENCING MEMORANDUM

The United States respectfully submits this sentencing memorandum seeking a sentence of imprisonment of 45 months for Count One.

### I. Guideline Calculations in the Pre-sentence Report

After consideration of the charge and facts related to the above-captioned case, the United States Probation Office for the District of Puerto Rico established the following guideline calculations. D.E. 33 at pp. 5-6. Because Defendant was a prohibited person at the time he committed the instant offense, the base offense level is 14 pursuant to U.S.S.G. §2K2.1(a)(6). Defendant possessed the ammunition in connection with another felony offense. Accordingly, the offense level in increased by four levels pursuant to U.S.S.G. § 2K2.1(b)(6)(B). Defendant has demonstrated acceptance of responsibility. Therefore, the offense level is decreased by three levels pursuant to USSG § 3E1.1(a) and (b). This calculation yields a total offense level of 15. *Id*. After factoring in his Criminal History Category of II, as determined by the PSR, Defendant's guideline imprisonment range, as calculated by the USPO, would be 21-27 months. However, the United States respectfully objects to this guideline calculation.

1

`

### a. The United States' Formal Objection to the Amended Presentence Report at D.E. 33

On September 5, 2025, the U.S. Probation Office issued a PSR finding that Defendant's base offense level was 12. D.E. 29. On that same date, the United States filed informal objections arguing that U.S.S.G. §§ 2K2.1(b)(4)(B)(ii) and 2K2.1(b)(6)(B) apply to Defendant and, as such, his total offense level should be 19. On October 7, 2025, the USPO filed an Amended PSR in which § 2K2.1(b)(6)(B) was properly applied to Defendant increasing Defendant's total offense level to 15. However, § 2K2.1(b)(4)(B)(ii) was not applied to Defendant. In the Second Addendum to the PSR the USPO contends, in short, that they do "not have evidence that the defendant indeed possessed [the] knowledge" that his firearm did not have a serial number and that it would be an assumption to find that he did.

The United States respectfully objects to the USPO's determination that § 2K2.1(b)(4)(B)(ii) does not apply to Defendant. This Court should conclude that § 2K2.1(b)(4)(B)(ii) applies to Defendant because he knew, was willfully blind or consciously avoided knowledge that his firearm did not have a serial number. Therefore, Defendant's correct Guidelines calculation is a total offense level of 19 at CHC II (33-41 months).

Under U.S.S.G. § 2K2.1(b)(4)(B)(ii) a four-point increase applies if "the defendant knew that any firearm involved in the offense was not otherwise marked with a serial number […] or was willfully blind to or consciously avoided knowledge of such fact". U.S.S.G. §2K2.1 Application Note 8 (B) addresses the state of mind required of Defendant and it makes a distinction between the subsections which apply regardless of whether or not the defendant knew or had reason to believe in the fact, and § 2K2.1(b)(4)(B)(ii) which applies if Defendant knew, was willfully blind or consciously avoid knowledge of the fact. Facts relevant to sentencing are to be

`

proved by a preponderance of the evidence. *See* U.S.S.G. § 6A1.3. *See also U.S. v. Watts,* 519 U.S. 148, 155, 117 S. Ct. 633, 637, 136 L. Ed. 2d 554 (1997). Here, there is ample evidence which establishes by a preponderance of the evidence that Defendant knew, was willfully blind or consciously avoided knowledge of the fact that his firearm had no serial number.

*First*, the firearm does not have a serial number. *Second,* Defendant possessed the firearm and the ammunition on January 19, 2025, out in public. *Third*, Defendant intimidated others in the restaurant with the firearm. *Fourth*, Defendant discharged the firearm publicly. *Fifth*, the firearm he possessed was loaded with three rounds of ammunition when seized. *Six*, Defendant admitted to possessing the firearm and ammunition, discharging it four times and having possessed it for at least 6 months. *Seventh*, the three casings recovered at the scene were matched to his firearm. Therefore, by all accounts, including Defendant's own, he has made repeated and continuous use of the firearm for an extended period of time. Defendant is also familiar enough and confident enough in using the firearm that he'll possess it, carry it, show it and discharge it repeatedly. All this shows that he knew, was willfully blind or consciously avoided knowledge of the fact that his firearm had no serial number.

## II. The Offense Conduct

Defendant pled guilty to Count One of the Indictment which charges him with being a felon in possession of ammunition in violation of 18 U.S.C. §922(g)(1). The following are the facts of the case:

On January 19, 2025, at approximately 8:30pm, Puerto Rico Police Bureau (PRPB) Agents received a call from employees at Los Quesitos Restaurant, located on Route #167, kilometer 9.7, Dajaos Ward in Bayamon. P.R. The caller indicated there was a male intimidating employees and customers at the restaurant with a firearm. PRPB Agents from the Dajaos Precinct responded to

the area and observed two individuals inside a vehicle that was parked in front of the establishment. However, the Agents parked further down the road, facing the restaurant, while they waited for additional police units. The employee that was on the phone with the police informed the Agents that the front passenger of the vehicle was the one with the firearm and he was exiting the vehicle wearing a red shirt. The Agents received this information while they were observing the male in the red shirt walking towards them. When the subject, later identified as Christian Catala-Perez, got too close to the patrol car, the Agents exited their vehicle and detained him. Catala-Perez was advised of his rights, and a safety frisk was conducted. Catala-Perez had a fanny pack around his waistband and during the pat down, one of the agents felt what appeared to be a firearm inside the fanny pack. From the fanny pack, the agents seized:

1. One Lone Wolf pistol, model Freedom Wolf, 9mm-caliber, loaded with 3 rounds of 9mm caliber ammunition.

From Catala-Perez, the Agents seized several other items including a cellphone.

The Agents learned through witnesses that Catala-Perez had discharged the firearm more than once in the vicinity of the arrest before the police had arrived. The Agents recovered three spent 9mm shell casings which, according to lab reports, were fire by Catala-Perez's firearm. On January 20, 2025, ATF Agents interviewed Catala-Perez. After his Miranda warnings were administered, Catala-Perez waived them and agreed to speak to the ATF Agents. In response to questioning, Catala-Perez stated, among other things, that he fired four shots near the river. Catala-Perez also claimed ownership of the firearm and stated that he has been in possession of it for approximately 6 months. Catala-Perez admitted he had no firearms license and that he had been imprisoned for 3 years in the Ponce correctional institution for the domestic violence charges he had on file.

`

### III.   Defendant's Background and Characteristics

Defendant is 32 years old and was born in Toa Alta, Puerto Rico.[1] Defendant was raised by both his parents and all his basic needs were met.[2] Defendant has no major physical or emotional conditions.[3] Defendant has no known history of controlled substance abuse.[4] Defendant has a recent conviction for threatening and assaulting a consensual partner.[5]

### IV.   Sentencing Procedure, 18 U.S.C. § 3553 Factors

District courts should follow a standard procedure when sentencing defendants. That standard was set forth in *Gall v. United States*, 552 U.S. 38 (2007). According to that precedent, the district court's "starting point" is to determine the advisory sentencing range under the Guidelines. *Id.* at 49. That includes resolving any objections to the presentence report. *United States v. Laureano-Perez*, 797 F.3d 45, 80 (1st Cir. 2015). The parties then present their arguments on what they believe is the appropriate sentence. *Gall*, 552 U.S. at 49. After that, the district court must weigh the factors in section 3553(a) to determine whether they support the sentences requested by the parties. *Id.* A district court errs in performing this procedure by treating the Guidelines as obligatory rather than advisory, *id.* at 51, or presumptively reasonable, *United States v. Nelson*, 555 U.S. 350, 352 (2009) (per curiam). The district court is required to provide an explanation for the sentence it determines is appropriate; that allows for meaningful appellate review and promotes the perception of fair sentencing. *Gall*, 552 U.S. at 50.

---

[1] Amended PSR at ¶ 39.
[2] *Id.* at ¶ 42.
[3] *Id.* at ¶¶ 49-50.
[4] *Id.* at ¶ 51.
[5] *Id.* at ¶ 34.

`

Pursuant to 18 U.S.C. § 3553(a), a sentencing court must consider the following factors when imposing a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established ...

(5) any pertinent policy statement—

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

In weighing the factors under 18 U.S.C. § 3553 and making our recommendation to the Court, the United States has considered that this is Defendant's second felony offense in the short time span of three and a half years. The United States has also considered that Defendant's behavior has become increasingly more dangerous going from physical assault and threats to

`

possessing and discharging a firearm. The serious nature and circumstances of the offense which include intimidating multiple innocent bystanders with a loaded firearm and discharging it out in the open counsels for a higher sentence. The Guidelines themselves suggest that "the discharge of a firearm might warrant a substantial sentence increase" above the guidelines range. U.S.S.G. § 5K2.6. *See also United States v. Lopez-Felicie* 109 F.4th 51, 59 (1st Cir. 2024) (upholding an upward departure where the reckless, irresponsible and criminal discharge of a firearm is not accounted for in the guidelines calculation); *United States v. Godfrey*, 863 F.3d 1088, 1098-99 (8th Cir. 2017) (holding that the defendant's discharge of his gun "in very close proximity to women and children" was a reasonable factor in an upward variance). In addition to these factors, the United States has considered Defendant's age, prompt acceptance of responsibility, family support and his degree of schooling. Therefore, in order for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public and provide correctional treatment, the United States recommends that Defendant be sentenced to 45 months of imprisonment.

## V.    Conclusion

The § 3553 sentencing factors weigh in favor of a sentence of 45 months of imprisonment. The recommended sentence is a just and reasonable resolution to this case.

WHEREFORE, the United States respectfully requests and prays that this Court take notice of all of the above and sentence the Defendant accordingly.

`

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 21st day of October 2025.

                                                        W. STEPHEN MULDROW
UNITED STATES ATTORNEY

*/s/ César E. Rivera Díaz*
USDC/PR Bar # 307401
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
(787) 766-5656
Cesar.rivera.diaz@usdoj.gov

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                        */s/ César E. Rivera Díaz*
Assistant United States Attorney